Curtis JOHNSON, Appellant,

v.

Dr. J.R. WHITEHURST, et al., Appellee.

No. 01–82–0286–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 3, 1983.

Rehearing Denied March 24, 1983.

John Holloway, Houston, for appellant.

Dan Ryan, and H. Ronald Welsh, Houston, for appellee.

Before EVANS, C.J., and JACK SMITH and DUGGAN, JJ.

## OPINION

JACK SMITH, Judge.

This is an appeal from a take nothing judgment in a medical malpractice suit. The appellant, Curtis Johnson, asserts twenty-one points of error.

The appellant was hospitalized for gastrointestinal bleeding on September 23, 1975. Dr. Bautista, a licensed internist, examined the appellant and diagnosed the appellant's condition as an active, bleeding duodenal ulcer. The appellant remained in the hospital, was put on a bland diet, and given an antacid to control the bleeding. Five days after admission to the hospital, the appellant informed Dr. Bautista that approximately six years before this hospitalization, he had been admitted to another hospital and treated for a peptic ulcer condition. Based on this new information, Dr. Bautista re-diagnosed the appellant's condition as: "A chronic, bleeding, duodenal ulcer that was recurrent and retractable to medical therapy."

Dr. Bautista then advised the appellant that he was going to consult with a surgeon to determine whether surgery could relieve

the appellant's condition. Dr. Bautista called Dr. Whitehurst, advised him of the appellant's condition, and later that day, Dr. Whitehurst visited with the appellant in the hospital.

After Dr. Whitehurst's visitation with the appellant, he recommended that the appellant undergo a Billroth II procedure and a vagotomy. These two procedures consist of the removal of the lower portion of the stomach and a reconnection of the small intestine to a different area of the stomach. The vagus nerve extending to the lower stomach would also be removed to further reduce the secretion of acid into the stomach. After talking to the doctors, the appellant decided to proceed with the surgery and signed a surgery consent form.

Dr. Whitehurst performed surgery. After developing complications from the surgery, the appellant filed this suit against the two doctors. He alleged several theories for recovery.

The appellant testified that in 1979 he was hospitalized for bleeding of three ulcers which had formed after the operation by Dr. Whitehurst. He stated that during this hospitalization he required a blood transfusion consisting of eleven units of blood, and that he developed a reaction to foreign blood. He further stated that his doctor, Dr. Parnell Avery, had recommended additional surgery, hoping to cure the recurrence of the ulcers and the condition of permanent diarrhea. The appellant stated that because he had developed a reaction to foreign blood, surgery involved a greater risk of death. He has refused further surgery.

The appellant alleged at trial that Dr. Bautista had been negligent in recommending surgery and in failing to obtain the appellant's informed consent to surgery. He alleged that Dr. Whitehurst had been negligent in failing to obtain the appellant's informed consent to surgery, and had also been negligent in the performance of the surgery.

The trial court refused to submit special issues concerning negligence against Dr. Bautista, but submitted them against Dr. Whitehurst. After the jury answered all special issues in favor of Dr. Whitehurst, the court entered a take nothing judgment.

The appellant first complains of the trial court's refusal to submit special issues concerning Dr. Bautista's actions, and its refusal to grant a directed verdict against Dr. Bautista. The appellant raises separate arguments for his contentions and we will address them in the same manner.

### Issues of Informed Consent

The appellant contends that he submitted sufficient evidence to have the jury determine whether Dr. Bautista obtained the appellant's informed consent to surgery. He argues that Dr. Whitehurst and Dr. Bautista had a shared duty to apprise him of the alternatives to, and the complications of, surgery. Dr. Bautista, on the other hand, contends that this was the surgeon's duty and that he, as the attending physician, had no duty to apprise the appellant of the risk of surgery.

The resolution of the appellant's argument turns on whether Dr. Bautista had a duty to obtain the appellant's informed consent to surgery that was to be performed by another doctor.

In Texas, a doctor must secure the authority or consent of his patient in order to legally perform medical procedures. Doctors generally have a duty to make reasonable disclosures to their patients of the risk of medical treatment. This duty is based on the right of every normal adult to determine what shall be done to his own body. Where the doctor has failed to reasonably inform his patient of the risks, the patient is unable to intelligently arrive at a decision regarding the treatment. Thus, the doctor is said to have failed to obtain the patient's informed consent for the medical procedure. *Wilson v. Scott,* 412 S.W.2d 299 (Tex.1967); *Anderson v. Hooker,* 420 S.W.2d 235 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.); *See generally; Purdue, Medical Malpractice—Cause of Action,* 11 Hous.L.Rev. 2, 10 (1973).

■ In an action based on the physician's failure to obtain the informed consent of the patient, the plaintiff has the burden to prove by expert medical testimony, what a reasonable medical practitioner in the same or similar community, acting under the same or similar circumstances, would have disclosed to his patient about the risk incident to the proposed treatment. The plaintiff must also prove that the defendant physician departed from that standard, as well as proximate causation and damages. *Wilson v. Scott, supra.*

One of the most recent cases which has addressed the issue of the duty of a physician to obtain his patient's informed consent is *Ross v. Sher,* 483 S.W.2d 297 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). In *Ross* the court held that a fact question did not exist because the attending physician did not participate in the surgery, and thus had no duty to obtain the patient's informed consent. 483 S.W.2d at 301. This holding was based, in part, on an early Texas Supreme Court case which held that the referring doctor cannot be liable for the negligence of the doctor to whom he referred the patient, unless the referring doctor was negligent in recommending the second physician. *Moore v. Lee,* 109 Tex. 391, 211 S.W. 214 (1919).

A similar case is *Bell v. Umstattd,* 401 S.W.2d 306 (Tex.Civ.App.—Austin 1966, writ dism'd). In *Bell,* the plaintiff sued an anesthesiologist on the basis that the anesthesiologist failed to obtain the plaintiff's informed consent to the method in which the anesthesia was administered. The plaintiff had signed a surgical consent form which included his consent to the administration of the anesthesia. The court held that since the plaintiff did not inquire as to the method of the administration of the anesthesia, the anesthesiologist was not under a duty to obtain the patient's informed consent. The court reasoned that a surgical procedure may consist of many steps and involve many specialists. Therefore, it would be unreasonable to place a burden of full and complete disclosure upon each and every specialist involved, as to the specific methods intended to be used in an operation, and of all the possible risks involved in each step of an operation.

■ The reasoning utilized in *Bell* appears appropriate to apply to the instant fact situation. Dr. Bautista is not a surgeon and therefore could not perform the procedure. He recommended that Dr. Whitehurst be called into the case. Dr. Whitehurst is a surgeon, and being more familiar with the proposed surgical procedure, could inform the appellant of the possible risks and consequences. Under these facts, the law requires only that Dr. Bautista exercise ordinary care in choosing Dr. Whitehurst. The appellant has not alleged that Dr. Bautista was negligent in choosing Dr. Whitehurst. Therefore, since Dr. Bautista did not participate in the surgery, he had no duty to inform the appellant of the possible risks and complications involved in the operation.

■ Another problem with the appellant's contention is that there is no expert medical testimony as to what Dr. Bautista should have told the appellant regarding surgery. Dr. Avery, the appellant's medical expert, testified that in Houston, the standard medical practice is for surgeons to obtain the patient's informed consent. He further testified that in his opinion, the surgeon, not the internist, has a duty to obtain the patient's informed consent for surgery.

We hold that the appellant has failed to prove by expert medical testimony that Dr. Bautista had the duty to obtain the appellant's informed consent to surgery. We further hold, that under the facts of this case, there was no duty on the part of Dr. Bautista, the referring physician, to obtain the patient's informed consent to a surgical procedure to be performed by another doctor. The appellant's seventh point of error is overruled.

### Issues of Dr. Bautista's Negligence

■ The appellant alleges that Dr. Bautista was negligent in recommending surgery in the first place. Dr. Parnell Avery,

the appellant's expert witness, testified that he probably would not have operated. However, he further testified that the appellant was a candidate for surgery and the four factors on which a doctor would base a recommendation for surgery were present in the appellant's case. Dr. Avery did not testify that Dr. Bautista was negligent in recommending surgery. The appellant has failed to meet his burden of proof. *Wilson v. Scott, supra.*

The appellant's second allegation is that Dr. Bautista negligently failed to obtain the appellant's informed consent to surgery. In view of our prior holding that Dr. Bautista had no duty to obtain the appellant's informed consent to the surgery, this point of error is overruled.

The appellant's next allegation is that Dr. Bautista negligently misrepresented the nature of the appellant's illness. He further contends that the trial court erred in refusing two special issues to the jury concerning whether Dr. Bautista made a fraudulent misrepresentation as to the nature of the appellant's illness. The appellant testified at trial that Dr. Bautista told him that he could develop cancer if he did not submit to surgery. Dr. Bautista denied telling appellant that he might develop cancer if he did not submit to surgery. Dr. Bautista and Dr. Whitehurst testified that a bleeding duodenal ulcer is not a condition that is potentially cancerous.

■ The issue of fraudulent misrepresentation by a doctor is included within the category of informed consent. *Gaut v. Quast,* 505 S.W.2d 367 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.), per curiam 510 S.W.2d 90 (Tex.1974). The court reasoned that the doctor did not fraudulently operate, he fraudulently obtained a consent to operate. The court held that the plaintiff was not entitled to a submission of special issues on fraud, independently on his issues on informed consent. 505 S.W.2d at 369. Applying this reasoning to the instant case, the appellant was not entitled to submission of any special issues on negligent or fraudulent misrepresentation for three reasons. First, Dr.

Bautista had no duty to obtain the appellant's informed consent to surgery. Second, the appellant failed to produce expert medical testimony that the standard of practice in Harris County required Dr. Bautista to obtain the appellant's informed consent. Finally, the jury found that Dr. Whitehurst had discharged his duty of obtaining the appellant's informed consent. Therefore, we hold that the appellant was not entitled to the submission of issues on negligent or fraudulent misrepresentation.

Finally, the appellant contends in three points of error that the trial court's withdrawal of the special issues concerning Dr. Bautista constituted a directed verdict against the appellant, issued on the court's own motion. He asserts that the trial court may not grant a directed verdict on its own motion.

■ It has long been Texas law that a trial court may render a directed verdict on its own motion where there are no disputed issues of fact. *Weiser v. Hampton,* 445 S.W.2d 224 (Tex.Civ.App.—Houston [1st Dist.] 1959, writ ref'd n.r.e.); *Harvey v. Elder,* 191 S.W.2d 686 (Tex.Civ.App.—San Antonio 1945, writ ref'd). We find no merit to the appellant's contention since the record reflects that there were no disputed issues of fact regarding Dr. Bautista's liability to the appellant.

The appellant's points of error one through six, eight and nine are overruled.

### Issues Concerning Dr. Whitehurst's Liability

The appellant asserts that the findings by the jury concerning whether Dr. Whitehurst obtained the appellant's informed consent were against the great weight and preponderance of the evidence. He contends that Dr. Whitehurst did not obtain his informed consent, as a matter of law. He also contends that, as a matter of law, Dr. Whitehurst was negligent in the manner in which he performed the operation.

■ The rule in reviewing such contentions is that the appellate court must view the evidence in the light most favorable to

the jury verdict, considering only the evidence and inferences that support the jury findings. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981).

■ The record in the instant case supports the jury's findings. Dr. Whitehurst testified that he explained the surgery in detail to the appellant. He went so far as to draw a diagram of the appellant's stomach showing what surgical procedures he intended to use. Dr. Whitehurst further testified that he apprised the appellant of the risk of the surgery. Testimony by Dr. Avery established that the Billroth II procedure always involved some risk of injury to the pancreas, even when the surgery is performed competently and by the best of surgeons. This evidence, when viewed in the light most favorable to the jury findings, supports the conclusion that Dr. Whitehurst obtained the appellant's informed consent to surgery and that he was not negligent in his performance of the surgery. The appellant's points of error ten, eleven, eighteen and nineteen are overruled.

■ The appellant contends in points of error twelve and thirteen, that the trial court's improper conditioning of issues and its refusal of instructions regarding Dr. Whitehurst's liability was error. He first objects to the trial court's conditioning the submission of the causation issue upon an affirmative finding that Dr. Whitehurst failed to obtain the appellant's informed consent to surgery. He cites *Bell v. Aetna Casulty and Surety Co.*, 394 S.W.2d 830 (Tex.Civ.App.—Houston 1965, writ ref'd n.r. e.), as supportive of this argument. *Bell* does not support his argument. It holds that a party waives error if he does not object to the improper conditioning of one issue upon another issue which concerns an undisputed fact. 394 S.W.2d at 833.

Rule 277, Texas Rules of Civil Procedure states:

... Conditioned upon an affirmative finding of negligence as to one or more acts or omissions, a further question may inquire whether the corresponding specific acts or omissions ... inquired about in the preceding questions were proximate causes of the accident, event, or occurrence that is the basis of the suit. Similar forms of questions may be used in other case.

That a fact issue existed as to whether Dr. Whitehurst obtained appellant's informed consent to surgery is undisputed. Rule 277 authorizes the trial court to conditionally submit special issues on proximate cause. Further, in the event of a proper conditional submission of issues to the jury, there is no right to insist upon an unconditional submission. *Sanchez v. Texas Emp. Ins. Ass'n*, 618 S.W.2d 837 (Tex.Civ.App.—Amarillo 1981, no writ); see also *Strauss v. Lamark*, 366 S.W.2d 555 (Tex.1963).

The appellant next argues that the trial judge should have submitted his requested instruction regarding the duty to obtain the appellant's informed consent to surgery. He urges that both Dr. Bautista and Dr. Whitehurst judicially admitted that they had a joint duty to obtain the appellant's informed consent. He further asserts that the jury heard the appellant testify that he decided to have the surgery on the advice of both the doctors. He then reasons that since the jury had heard evidence throughout the trial that the two physicians had a joint duty regarding informed consent, they should have been instructed that the court had placed the "sole duty" to obtain informed consent from the appellant on Dr. Whitehurst.

■ Rule 277, Texas Rules of Civil Procedure, requires the trial court to submit explanatory instructions and definitions as shall be proper to enable the jury to render a verdict. The trial court has considerable discretion in deciding what instructions are necessary and proper. *Southern Pacific Transp. Co. v. Garrett*, 611 S.W.2d 670 (Tex. Civ.App.—Corpus Christi 1980, no writ). The only requirement to be observed is that the trial court must give definitions of legal and other technical terms. *Rendon v. Texas Employers Insurance Association*, 599 S.W.2d 890 (Tex.Civ.App.—Amarillo 1980, writ ref'd, n.r.e.).

The following instruction was submitted by the court:

By the term "informed consent", as used in this charge as to Dr. Whitehurst, is meant the furnishing to Curtis Johnson of such information as would be furnished by a reasonable and prudent physician, specializing in general surgery in the exercise of ordinary care for a patient under the same or similar circumstances, about the nature and extent of the risks, complications, benefits or detriments, if any, involved in the patient accepting or refusing suggested medical or surgical treatment for duodonal ulcer disease, so as to enable the patient to make a knowledgeable, intelligent, and fully informed decision to either accept the suggested medical or surgical treatment or to refuse the suggested medical or surgical treatment.

The following instructions were requested by the appellant:

In connection with special issue no. 1, pertaining to the failure, if any, of Dr. Whitehurst to obtain the patient's informed consent, you are instructed that there is an obligation on the part of Dr. Whitehurst to obtain the "informed consent" of Curtis Johnson, and which obligation exists under the physician-patient relationship in recommending surgical treatment, rather than conservative medical treatment, for a disease and that such a surgeon when obtaining the patient's informed consent owes the patient an affirmative duty to advise the patient as to the alternatives of accepting or refusing both suggested medical or surgical treatment for a disease.

In this connection, you are instructed that under the facts of this case, that the court had determined that there is no obligation under the doctor-patient relationship upon Dr. Bautista in referring Curtis Johnson to Dr. Whitehurst which case would require Dr. Bautista to obtain the patient's informed consent to the surgery as a treatment for duodenal ulcer disease.

Therefore, you are further instructed that any action on the part of Dr. Whitehurst in "assuming" that Dr. Bautista had informed Curtis Johnson as to the risks, complications, detriments and benefits of conservative medical treatment for duodenal ulcer disease, in order to obtain Curtis Johnson's informed consent, does not minimize or detract in any way from the legal obligations imposed upon Dr. Whitehurst to affirmatively obtain the "informed consent" of Curtis Johnson as that term has been defined for you.

■ The instruction given by the trial court defines the term "informed consent" as to Dr. Whitehurst only. This was a proper instruction because the fact issues pertained only to Dr. Whitehurst. An instruction to disregard any actions of Dr. Bautista, when considering the issue of whether Dr. Whitehurst obtained the appellant's informed consent might have been helpful, but was unnecessary. The trial court's refusal to submit the appellant's proposed instructions was not an abuse of discretion under Rule 277.

The trial court properly conditioned the answer to the special issue on causation, and did not abuse its discretion in refusing appellant's requested instructions. The appellant's points of error twelve and thirteen are overruled.

The appellant also contends that the trial court erred in refusing to submit an issue inquiring whether Dr. Whitehurst negligently injured the pancreas. The trial court submitted the following general negligence issue:

Do you find from a preponderance of the evidence that Dr. Whitehurst was negligent in performing the surgical procedure in question?

■ This issue encompassed all the allegations of negligence against Dr. Whitehurst in performing the surgical procedure in question, including injury to the appellant's pancreas and failure to discover the Vagus nerve. Rule 279, Texas Rules of Civil Procedure, permits the trial court broad discretion in a decision to submit special issues to the jury. See, *State v.*

*Norris,* 550 S.W.2d 386 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd, n.r.e.). We hold that the trial court did not abuse its discretion in submitting the issue of Dr. Whitehurst's negligence in the manner shown. The appellant's seventeenth point of error is overruled.

### Joint Liability Issues

 The appellant asserts that Dr. Bautista and Dr. Whitehurst had a joint liability or obligation to furnish information to him. He complains that the court refused to submit his requested issue that there was a breach of a joint duty. He also complains of the refusal of the court to grant his exceptions to the submitted issues because they did not inquire about joint liability or obligation of both doctors. Finally, he complains of the refusal of the court to submit an issue as to whether Dr. Bautista was a representative of Dr. Whitehurst in furnishing information for the patient's informed consent. As discussed above, the trial court correctly found that Dr. Bautista did not owe a duty to the appellant to obtain his effective consent to surgery as a matter of law. Therefore, the trial court properly refused to submit special issues on the joint duty of the doctors to obtain the appellant's informed consent.

The appellant's next assertion that the trial court erred in refusing to submit a special issue inquiring whether Dr. Bautista was "a representative of Dr. Whitehurst" in furnishing information for the appellant's informed consent is without merit. There is no evidence whatsoever in the record from which such a special issue could be supported.

Under Rule 279, Texas Rules of Civil Procedure, the trial court has broad discretion in the submission of special issues. *Wood v. Texas Farmer's Ins. Co.,* 593 S.W.2d 777 (Tex.Civ.App.—Corpus Christi 1979, no writ). Moreover, only those controlling issues which are supported by both the pleadings and the evidence should be submitted. *Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Appel-

lant's points of error fourteen, fifteen and sixteen are overruled.

### Damages

In his last two grounds of error the appellant asserts that the award of "0" damages indicates bias by the jury as a matter of law, and that such finding by the jury is so against the overwhelming great weight and preponderance of the evidence as to be manifestly wrong and unjust. He argues that the trial court was required to take judicial notice that surgery produces pain and suffering, citing *Harle v. Krchnak,* 422 S.W.2d 810 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd, n.r.e.). *Harle* is distinguishable from the instant case because in *Harle* the jury found the defendant liable to the plaintiff. Where the jury has answered special issues on liability in the negative, the failure of the jury to award damages is not error. *Gaut v. Quast,* 505 S.W.2d 367 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.); *Southern Pine Lumber Co. v. Andrade,* 132 Tex. 372, 124 S.W.2d 334, 335 (Tex.Comm.App.1939, op. adopted). The appellant's twentieth and twenty-first points of error are overruled.

The judgment of the trial court is affirmed.