**Charles William "Chick" SMITH, Sr., et al., Appellants,**

v.

**Carolyn Shaffer SMITH, et al., Appellees.**

**No. 01–85–0989–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 25, 1986.

Rehearing Denied Oct. 30, 1986.

Marian S. Rosen, Mary M. Rawlins, Marian S. Rosen & Associates (Eugene Smith University of Houston Law Center, of counsel), Houston, for appellants.

Randy Donato Weitinger, Steelhammer & Tucker, Larry Doherty, Doherty & Williamson, Kevin Dubose, Houston, for appellees.

Before SAM BASS, COHEN, and ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

SAM BASS, Justice.

Carolyn Shaffer Smith, in her own behalf and as next friend of her two minor children, appellees, brought suit against Charles William "Chick" Smith, Sr., Pat Smith, Mark Smith, Kim Smith Chavarria, and Esteban Chavarria, appellants, seeking to recover actual and exemplary damages for interference with child custody.

The appellees alleged that the appellants aided and assisted Charles William

"Chuck" Smith, Jr., the father of the minor children, by taking and retaining the children and by concealing the whereabouts of the children in violation of a court order. After a trial to a jury, judgment was entered for the appellees in excess of $53 million dollars.

In their first point of error, the appellants contend that the trial court committed reversible error in appointing a guardian ad litem.

Tex.R.Civ.P. 173 provides in material part:

When a minor ... is a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor, ... the court shall appoint a guardian ad litem for such person and shall allow a reasonable fee for his services to be taxed as part of the cost.

When the trial court determines that there appears to be a conflict of interest, the obligation to appoint a guardian ad litem is mandatory and not discretionary. *Jaynes v. Lee*, 306 S.W.2d 182 (Tex.Civ.App.—Texarkana 1957, no writ).

■ Since a conflict of interest between the next friend and minors could have arisen during settlement negotiations or trial proceedings, the trial court did not abuse its discretion in appointing the guardian ad litem. *See Saad v. National National Care Center, Inc.*, 612 S.W.2d 660 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

Appellants' point of error one is overruled.

The appellants contend in point of error two that the trial court committed reversible error in appointing a guardian ad litem because appellants were not given proper notice of the appellees' motion for appointment which violated the local rules of the District Courts of Harris County, Texas, as well as Tex.R.Civ.P. 21.

■ When it "appears to the court" that there is a conflict between the interest of a minor and those of his next friend, it is the duty of the court to appoint a guardian ad litem. *Gibson v. Blanton*, 483 S.W.2d 372 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). The trial court is empowered, on its own motion, to appoint a guardian ad litem to represent the interests of minors that are parties to the proceedings. *Peterson v. Peterson*, 502 S.W.2d 178 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ); Tex.R. Civ.P. 173. Failure to give proper notice was harmless error in this instance.

Appellants' point of error two is overruled.

In points of error three and four, the appellants contend that the trial court abused its discretion in awarding guardian ad litem fees in the amount of $150,000 for work expended during trial and an additional $25,000 in the event of appeal, and that there was insufficient evidence to support the award of fees to the guardian ad litem.

■ Tex.R.Civ.P. 173 provides that the trial court shall allow the guardian ad litem a reasonable fee. No evidence is required to support the court's award of attorney's fees to the guardian ad litem. *Transport Insurance Co. v. Liggins*, 625 S.W.2d 780 (Tex.App.—Fort Worth 1981, writ ref'd n.r. e.); Tex.R.Civ.P. 173; however, evidence was presented to support the award of attorney's fees to the guardian ad litem.

■ The amount of compensation awarded to a guardian ad litem lies largely within the discretion of the court and will not be overturned unless a clear abuse of discretion is apparent from the record. *Poston v. Poston*, 572 S.W.2d 800 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ); *City of Houston v. Watson*, 376 S.W.2d 23 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). The test is whether the trial court's decision was arbitrary or unreasonable. *Dawson v. Garcia*, 666 S.W.2d 254, 264 (Tex.App.—Dallas 1984, no writ). In determining the reasonableness of the fees awarded to the guardian ad litem, the trial court can consider such factors as the amount of time and work spent on the case and also the amount in controversy. *Vaughn v. Gunter*, 458 S.W.2d 523 (Tex.

Civ.App.—Dallas), *writ ref'd n.r.e.*, 461 S.W.2d 599 (Tex.1970).

In the present case, evidence pertaining to the amount of time and work expended by the guardian ad litem, and the amount in controversy supported the amount of attorney's fees awarded by the trial court. The appellants did not cross-examine the guardian ad litem and presented no evidence to controvert the appellees' claim. The evidence supports the jury's findings.

Appellants' points of error three and four are overruled.

In four points of error, 5, 31, 32, and 33, the appellants contend that the trial court erred in denying their requests for corrective instructions and motions for mistrial regarding certain improper arguments and statements to the jury by appellees' counsel.

Appellate courts are not permitted to reverse a judgment and order a new trial unless they are of the opinion that the error of the trial court amounted to such a denial of the rights of the appellant as was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Tex.R.Civ.P. 434; *Holmes v. J.C. Penny Co.*, 382 S.W.2d 472 (Tex.1964). When alleging improper arguments by counsel, the complainant has the burden of proving (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979). In order for the improper argument to be deemed incurable, it must further be shown that the argument, by its nature, degree, and extent constituted reversible harmful error. *Id.* The entire record must be examined to determine the improper argument's probable effect on a material finding. *Id.* at 840. "From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Id.* See also *American Petrofina, Inc. v. PPG Industries, Inc.*, 679 S.W.2d 740 (Tex. App.—Fort Worth 1984, no writ); *McInnes v. Yamaha Motor Corp.*, 659 S.W.2d 704, 713 (Tex.App.—Corpus Christi 1983), *aff'd*, 673 S.W.2d 185 (Tex.1984).

In point of error five, the appellants argue that the trial court erred in denying their request for an instruction to the jury and motion for mistrial stemming from remarks made by the appellees' counsel that appellant Charles William "Chick" Smith, Sr. and his attorney were attempting to obstruct justice.

The objectionable statement was as follows:

Q. (Mr. Doherty continuing) Mr. Smith, my question to you, you knew that your wife and Chuck and the two grandchildren and Kim were in England and Scotland in late 1984?

MS. ROSEN: I object to the multifarious nature of that question, Your Honor.

THE COURT: All right. Do you want to break it down, Mr. Doherty?

A. (Mr. Doherty continuing) Did you know they were in England in October or November of 1984?

MS. ROSEN: Your Honor, it is still multifarious because he is referring to a number of parties, Your Honor.

MR. DOHERTY: The same parties.

MS. ROSEN: I object to it, Your Honor, because of the multifarious nature of the question.

THE COURT: Break it down, Mr. Doherty.

Q. (Mr. Doherty continuing) Did you know your wife was in England in 1984?

A. I don't believe—

MS. ROSEN: Excuse me, Your Honor. I would like to object and raise the objection I have raised previously concerning the matter of how the witness gained that information, Your Honor.

THE COURT: Do you want to do it again before the jury, Ms. Rosen?

MS. ROSEN: No, Your Honor. All I want to do is just preserve the record in that regard. Perhaps if I renew my objections that were made in the absence of the jury now in the presence of the jury to that question, Your Honor.

THE COURT: All right.

MR. DOHERTY: *Your Honor, this is a clear obstruction of my right to cross examine this witness. I would ask the Court to instruct the witness to answer my questions and instruct Ms. Rosen to refrain from interrupting the examination of this witness.* It's a very simple question: Did he know his wife was in England in 1984. Once we get the year battened down, then I'm going to batten down the month if that's what it takes to keep it from being multifarious.

MS. ROSEN: Judge, I'm not trying to obstruct and I'm not trying to take the jury's time at all, but Your Honor knows the discussion that took place in the absence of the jury and I would renew each of those objections in the the presence of the jury. You have given certain instructions to me and I am trying not to—

■ The appellants did not request an instruction to the jury, but did move for a mistrial based on the statement by appellees' counsel underscored above. A reading of the objectionable statement readily indicates that it was not an accusation of obstruction of justice. The statement did not result in harmful error to the appellants, and the trial court did not commit reversible error in denying the motion for mistrial.

In point of error 31, the appellants contend that the trial court committed reversible error in denying their request for an instruction and motion for mistrial when appellees' counsel made reference to settlement negotiations during his opening statement.

Counsel for the appellants stated:

But Randy said something more important than that two days ago. He said: Bring those children in this courtroom now and I'll dismiss this lawsuit.

*Well, Mr. Reynolds, you told this jury you didn't know whether or not yesterday had been very fruitful. And I agree. It was a waste of time.*

They can't bring those kids in here now with some cock and bull story about what is going on and beg for mercy—

■ The statement by appellees' counsel, in the context of the statements made by appellants' counsel and by the trial court, was not so prejudicial as to probably cause the rendition of an improper judgment in the case. Thus, the trial court did not commit reversible error in failing to instruct the jury or in denying the appellants' motion for mistrial.

The appellants contend in point of error 32 that the trial court committed reversible error in denying the appellants' request for instruction and motion for mistrial when appellees' counsel made reference to other litigation and law enforcement activities during his opening statement to the jury.

■ Counsel for the appellees did make reference to a pending lawsuit brought by appellant Beverly Kim Smith Chavarria. However, the appellants' attorneys had already referred to criminal proceedings involving the appellants. The objectionable statements by appellees' counsel were in fact invited. *See Standard Fire Insurance Co.*, 584 S.W.2d at 839. In addition, there was no timely objection to the statements, and therefore, any error was waived, *McInnes*, 659 S.W.2d at 713. Finally, even if the statements by appellees' counsel were improper, any error was cured by the court's instruction to the jury.

■ In point of error 33, the appellants contend that the trial court erred in denying their request for instruction and motion for mistrial when counsel for the appellees made references to the comparative wealth of the parties. The statement was as follows:

Q. What happens to those investigative costs if your opposition, the person who's got the kids and don't want you to get them, if they have a hundred thousand dollars to spend to fight you?

The court did instruct the jury as requested. That instruction was as follows:

THE COURT: Thank you, ladies and gentlemen. Ladies and gentlemen of the jury, you will not consider the wealth of any party to this lawsuit or the lack of wealth of any party to this lawsuit. It is not a relevant issue for your consideration.

Any error resulting from the question propounded by counsel for the appellees was rendered harmless by the court's instruction.

After a review of the entire record, we find it improbable that the verdict was caused by the allegedly improper argument. We find a greater likelihood that the verdict was based on the evidence.

The appellants have failed to show that any improper arguments, individually or cumulatively, were reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

Appellants' points of error 5, 31, 32 and 33 are overruled.

In point of error six, the appellants contend that the trial court committed reversible error in allowing the appellants' deposition testimony, in which they asserted their fifth amendment rights, to be read before the jury.

The appellants rely upon Tex.R.Evid. 513(b) which provides:

In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

The appellants argue that rule 513(b) applies, as opposed to rule 513(c), which provides:

Paragraphs (a) and (b) shall not apply with respect to a party's claim, *in the present proceeding,* of the privilege against self-incrimination. (Emphasis added.)

In commenting on Rule 513(b), Goode & Sharlot, *Privileges,* 20 Hous.L.Rev. 273, 396–97 (1983), state that "it is reasonable to anticipate that in most instances, planned reliance upon the privilege will be known in advance and the mandate of Rule 513(b) can be implemented through the use of motions in limine." The record does not indicate that the appellants made any effort, prior to or during the taking of their depositions, to facilitate the assertion of their fifth amendment rights in a manner so as to not become part of their deposition testimony. *See* Tex.R.Civ.P. 166b.

Since the present case was a civil proceeding, any of the appellants, including those with pending criminal charges, could have been called to testify, and some of those criminally charged did testify. *See McInnes v. State,* 618 S.W.2d 389, 392 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982). For the parties who were called or could have been called to testify, Tex.R.Evid. 513(c) permits the asking of questions that would necessitate the assertion of the privilege against self-incrimination before the jury.

Tex.R.Civ.P. 207(1) provides:

At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, insofar as admissible under the rules of evidence *applied as though the witness were then present and testifying,* may be used by any person for any purpose against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof.

Since the rules permit a deposition to be read into evidence before the jury, the appellants should have taken some precaution (e.g., a motion in limine or protection under Tex.R.Civ.P. 166b) to insure that the assertion of their fifth amendment rights was not included in the deposition testimony. Having failed to do so, they should not be permitted to later restrict the appellees' right to read the depositions into testimony.

We hold that evidence Rule 513(c), in conjunction with Tex.R.Civ.P. 207(1), permitted the reading into evidence before the jury that portion of the deposition testimo-

ny containing the appellants' assertion of their fifth amendment rights.

Appellants' point of error six is overruled.

In point of error seven, the appellants contend that the trial court erred in refusing to give the appellants' requested instruction concerning the assertion of fifth amendment rights.

Unif.R.Evid. 512, 13 U.L.A. 266 (1980), included a provision regarding the right to a jury instruction as follows:

Jury instruction. Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom.

However, this provision was omitted by the Texas Supreme Court in the Texas Rules of Evidence. Goode & Sharlot, *Privileges*, 20 Houston Law Review 273, 394 n. 475 (1983), states that, "although the deliberate omission implies that a party has no right to such instruction, a trial judge, in the exercise of his discretion, may give an instruction."

Tex.R.Evid. 513(a) provides:

The claim of a privilege, whether in the present proceeding or upon a prior occasion, *is not a proper subject of comment by judge or counsel,* and no inference may be drawn therefrom.

Although rule 513(a) may restrict the right to an instruction, that restriction does not apply under subsection (c) of Rule 513.

 Under the rules of civil procedure, the trial court has considerable discretion in deciding what instructions are necessary and proper when submitting issues to the jury. Tex.R.Civ.P. 277; *Rendon v. Texas Employers' Insurance Ass'n,* 599 S.W.2d 890 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Southern Pacific Transportation Co. v. Garrett,* 611 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1980, no writ). Absent the showing of a denial of a party's rights which was reasonably calculated to cause and probably did cause rendition of an improper verdict, no abuse of discretion by the trial court is shown.

*Steinberger v. Archer County,* 621 S.W.2d 838 (Tex.App.—Fort Worth 1981, no writ); *Minschen v. Rogers,* 596 S.W.2d 179, 183 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

 The appellants have not shown that failure to give the requested instruction relating to the assertion of fifth amendment rights was reasonably calculated to cause and probably did cause rendition of an improper verdict in the case. Having failed to do so, no abuse of discretion on the part of the trial court is shown.

Appellants' point of error seven is overruled.

In points of error 25, 26, and 27, the appellants argue that the trial court committed reversible error in refusing to submit explanatory instructions requested by the appellants.

The instructions requested are as follows:

1. One aids and assists the action of another if he associates, participates and seeks by his action to make the action of the other person succeed. Mere presence or mere association with the other person is not sufficient. Knowledge is also not sufficient. A person must have a stake in the outcome before he can aid and assist.

2. "Conceal" means to secrete and hide from view and from discovery. The person must have possession of the children in order to have concealed them. Merely knowing the whereabouts of the children is insufficient.

3. "Concealing the whereabouts of" means willfully withholding information from a person who has sought that information. There is no duty to volunteer information.

 Tex.R.Civ.P. 277 requires that in submitting the case, "the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict." The only function of an explanatory instruction in the charge is to aid and assist the jury in answering the issues submitted by the

court. *Rendon,* 599 S.W.2d 890. Explanatory instructions should be submitted when, in the sole discretion of the trial judge, they will help the jury to understand the meaning and effect of the law and the presumptions created thereby. *Garrett,* 611 S.W.2d 670. The only requirement to be observed is that the trial court must give definitions of legal and technical terms. *Rendon,* 599 S.W.2d at 896.

"Proper" instructions are those which aid the jury in answering the issues submitted; nothing else, however interesting or relevant to the case in general, is required. *Steinberger v. Archer County,* 621 S.W.2d 838 (Tex.App.—Fort Worth 1981, no writ). Absent the showing of a denial of a party's rights which was reasonably calculated to cause and probably did cause rendition of an improper verdict, no abuse of discretion on the part of the trial court is shown. *Steinberger,* 621 S.W.2d at 841; *Minschen,* 596 S.W.2d at 183.

■ The appellants have not shown that the trial court's failure to give the instructions to the jury resulted in a denial of their rights which was reasonably calculated to cause and probably did cause rendition of an improper verdict in the case.

Appellants' points of error 25, 26, and 27 are overruled.

The appellants contend in point of error 28 that there is insufficient evidence to support the jury's finding that the appellants took or retained possession of the children, concealed their whereabouts, or aided and assisted another in doing so.

Tex.Fam.Code Ann. sec. 36.02(a) (Vernon Supp.1986) provides:

A person who takes or *retains possession* of a child or who *conceals the whereabouts of a child* in violation of a court order that provides for possessory interest in a child may be liable for damages to the person who is denied a possessory interest in the child.

A person who assists another in conduct which violates sec. 36.02(a) may also be held liable. Sec. 36.02(c) provides:

"Each person who aids or assists in conduct for which a cause of action is authorized by subsection (a) of this section is jointly and severally liable for damages.

The issue in the present case is whether there is sufficient evidence to support a finding that the appellants aided or assisted Charles William "Chuck" Smith, Jr. in taking or retaining possession of the children or in concealing the whereabouts of the children.

■ The appellants concede that Kim Smith Chavarria and Pat Smith flew to England and met "Chuck" Smith and the children in November 1984. Charles William "Chick" Smith, Sr. joined them in England later. Appellants concede that arrangements were made for the rental of a car and for residing at a lodge in Scotland on Charles William "Chick" Smith, Sr.'s charge cards. The evidence indicates (1) that appellants, Pat Smith and Kim Smith Chavarria took possession of the children on April 9, 1984, and subsequently stated that appellee, Carolyn Smith, the children's mother, would never see the children again; (2) that appellant Pat Smith stated that she was taking the children to Florida and was willing to spend every penny she owned to prevent the appellee from regaining custody of the children; (3) that Charles William "Chick" Smith, Sr. stated that he would "spend everything" to win custody of the children; (4) that appellant Charles William "Chick" Smith, Sr. was present with Charles William "Chuck" Smith, Jr. on September 21, 1984, when the children were taken by Charles William "Chick" Smith, Sr. and Charles William "Chuck' Smith, Jr. from the custody of the appellee; (5) that a car was rented to appellants Patricia Smith and Kim Smith Chavarria along with Charles William "Chuck" Smith, Jr. in England on November 8, 1984; (6) that the automobile was charged on Charles William "Chick" Smith, Sr.'s charge card; (7) that Charles William "Chick" Smith, Sr. travelled to England on January 22, 1985; (8) that there was evidence that the children were staying in the same lodge with the elder Smiths in England; and (9) that Charles William "Chuck" Smith, Jr. did not

have the financial ability to support himself and the children without the continuing assistance of his family.

The evidence was sufficient to support the findings of the jury. Appellants' point of error 28 is overruled.

■ The appellants argue in point of error eight that chapter 36 of the Texas Family Code, the provision upon which the liability of the appellants is predicated, is unconstitutional because the bill by which chapter 36 was enacted fails to identify the general purpose of the Act in violation of art. III, sec. 35 of the Texas Constitution.

The caption to the bill reads as follows: An act relating to liability for interference with child custody and to court orders providing for possession of or access to a child.

Tex.Const. art. III, sec. 35 requires that any subject embraced in a bill must be expressed in the title and failure to do so results in that portion of the bill being void. Both the constitutional provision and the questioned statute are to be liberally construed in favor of constitutionality. *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974). The statute will not be held unconstitutional where its provisions relate, directly or indirectly, to the same general subject, have a mutual connection, and are not foreign to the subject expressed in the title. *Robinson,* 507 S.W.2d at 524–25. *See also Sowders v. M.W. Kellogg Co.,* 663 S.W.2d 644 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

■ The several matters contained in chapter 36 of the Texas Family Code relate to the same general subject. The caption to the bill adopted by the legislature does not violate the requirements of Tex. Const. art. III, sec. 35.

Appellants' point of error eight is overruled.

Appellants contend in points of error nine and ten that Tex.Fam.Code Ann. sec. 36.02 is unconstitutionally vague, and that secs. 36.02, 36.04, and 36.07 are unconstitutional because they violate the equal protection clauses of the Texas and United States Constitutions.

■ In passing upon the constitutionality of a statute, the court must begin with a presumption of validity. It is to be presumed that the legislature has not acted unreasonably or arbitrarily, and the burden is on the one who challenges an act to establish its unconstitutionality. *Sax v. Votteller,* 648 S.W.2d 661 (Tex.1983); *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974). A facial challenge to a statute for vagueness is appropriate only on an allegation that the law is vague "not in a sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); *Ferguson v. Estelle,* 718 F.2d 730 (5th Cir.1983).

■ In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A person who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Hoffman Estates v. Flipside, Hoffman Estate, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Al-Omari v. State,* 673 S.W.2d 892 (Tex. App.—Beaumont 1983, no writ).

■ The statute at issue does not prohibit or proscribe constitutionally protected conduct. The appellants' contention that sec. 36.02 of Tex.Fam.Code is unconstitutionally vague is rejected on two grounds: (1) the statute is not impermissibly vague in all of its applications; and, (2) the appellants engaged in conduct which is clearly

proscribed by the statute, prohibiting them from complaining of the vagueness of the law as applied to the conduct of others. *See Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191.

The appellants also contend that portions of chapter 36 of the Texas Family Code violate the equal protection clauses of the Texas and United States Constitutions. The appellants base this argument on the fact that sec. 36.07(a) requires, as a prerequisite to the filing of suit, that the person denied possessory interest in a child in violation of a court order give written notice of the specific violation of the order to the person violating the order. However, sec. 36.07(d) states that notice need not be given to persons aiding or assisting in conduct giving rise to a cause of action, though such parties may be held liable under sec. 36.02(c).

Sec. 36.04 of Tex.Fam.Code, providing affirmative defenses to liability under the Act, provides that the person who promptly and fully complies with the order after receiving notice of violation is not liable for damages. The appellants contend that since they were only liable for aiding and assisting in the objectionable conduct, they have effectively been deprived of the affirmative defense created in sec. 36.04.

■■■ The statute under consideration in this case will be reviewed under the rational basis test because no fundamental right or suspect classification is involved. *Sullivan v. University Interscholastic League*, 616 S.W.2d 170 (Tex.1981). A rational basis for a statutory classification exists if any state of facts may be reasonably conceived to justify the scheme. *Humble v. Metropolitan Transit Authority Co.*, 636 S.W.2d 484 (Tex.App.—Austin 1983, writ ref'd n.r.e.), *dism'd*, 464 U.S. 802, 104 S.Ct. 47, 78 L.Ed.2d 68 (1983). One who assails the classification in the statute must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. *Morrey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

■■■ The classification used in chapter 36 of the Texas Family Code is rationally related to a legitimate state interest, to facilitate the return of a child to the person who has been denied a possessory interest. In order to facilitate that objective, sec. 36.07 requires that notice be given to the person who has actually violated the court order prior to the filing of suit. It is reasonable to believe that one who has violated the order will be more likely to bring about the child's return than will a mere accomplice. The court finds that the notice provision of chapter 36 of the Texas Family Code bears a rational relationship to a legitimate state interest.

Appellants' point of error 10 is overruled.

In point of error 11, the appellants contend that the trial court committed reversible error in permitting depositions taken in a manner contrary to the rules of civil procedure to be read into evidence over objection. The depositions were taken in Scotland and England. The appellants contend that their motion to suppress the depositions should have been granted because the person who took the depositions was not authorized to administer an oath in Scotland or England. The appellants rely on the fact that the depositions began on June 17, 1985, but Al Farrack, the person administering the oaths and taking the depositions, did not receive his commission until June 18, 1985.

Tex.R.Civ.P. 188 provides in material part:

> Whenever the deposition, written or oral, of any person is to be taken in a sister state or in a foreign country, or in any other jurisdiction, foreign or domestic, for use in this state, such deposition may be taken (1) on notice before a person authorized to administer oath in the place in which the examination is held, either by the law thereof or *by the law of the State of Texas,* ....

Tex.Rev.Civ.Stat.Ann. art. 3746(3) (Vernon 1926) states that if the witness being deposed resides or is located outside the United States, the commission to depose shall be addressed *to any notary public* or any

minister, commissioner, or charge d'affairs of the United States resident in, and accredited to, the country where the deposition may be taken, or any consul-general, consul, vice-consul, commercial agent, vice-commercial agent, deputy consul, or consular agent of the United States resident in such country.

■ Any person taking a deposition within the State of Texas is also required to be commissioned under art. 3746(1). Since the requirements of Rule 188 and art. 3746 were substantially complied with, the objective of the rules of civil procedure were satisfied. Tex.R.Civ.P. 1.

■ A second point asserted by the appellant is that Al Farrack was not authorized to administer oaths under the law of Scotland or England. *See* Tex.R.Civ.P. 188(1). Appellants have failed to establish this fact by proving the law of these other jurisdictions. Tex.R.Evid. 202, 203.

Appellants' point of error 11 is overruled.

In point of error 12, the appellants contend that the trial court committed reversible error in denying the appellants' motion to suppress these same depositions because the depositions were not signed by the deposed parties, nor had 20 days been allowed for obtaining that signature, thereby violating Tex.R.Civ.P. 205. In a related argument, the appellants contend in point of error 13 that the trial court committed reversible error in permitting these depositions, which were not signed by the deposed parties, to be read into evidence.

The record discloses that the only unsigned deposition used at trial was that of Detective Miller. The appellees contend that Detective Miller was unavailable to sign his deposition before the start of trial. However, a signed copy of Miller's deposition, without changes, was filed before the trial ended.

■ The appellants object to the court's failure to suppress this deposition and also objects to the reading of portions of it into evidence merely because it was not signed by the witness. The appellants have not alleged any facts that would impugn the reliability of the deposition. Suppression of a deposition is not justified by mere lack of signature. *Hill v. Rich,* 522 S.W.2d 597 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.); *Bell v. Linehan,* 500 S.W.2d 228 (Tex. Civ.App.—Texarkana 1973, writ ref'd n.r. e.).

Appellants' points of error 12 and 13 are overruled.

In points of error 14 and 15, the appellants assert that the trial court committed reversible error in permitting appellant Chavarria's deposition, given in a prior case, to be read into evidence. In addition, the appellants contend that the proper predicate was not laid.

A statement is not hearsay if it is a deposition taken and offered in accordance with the Texas Rules of Civil Procedure. Tex.R.Evid. 801(e)(3). In addition, the Texas Rules of Evidence apparently do not require that former testimony involve substantially the same parties and issues as a condition to admissibility. *Cf.* Tex.R.Evid. 804(b)(1). Tex.R.Civ.P. 207(1), regarding the use of depositions in court proceedings, states that "any part or all of a deposition, insofar as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used by any person for any purpose against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof." This rule permits the use of a deposition from a different lawsuit if all of the requirements of the rule are satisfied.

■ If use of a deposition from a different lawsuit is permitted under Tex.R. Civ.P. 207(1), then Tex.R.Evid. 801(e)(3) dictates that such deposition testimony is not hearsay. As an alternative, the deposition testimony may be admissible as an admission by a party-opponent. A statement is not hearsay if it is offered against a party and is his own statement in either his individual or representative capacity. Tex.R. Evid. 801(e)(2). The deposition testimony may also be admissible as former testimony. *See* Tex.R.Evid. 804(b)(1), 804(a)(1).

Based on any of these three rationales, the deposition testimony was not inadmissible hearsay and was properly admitted into evidence.

The appellants also contend that the deposition of appellant Kim Smith Chavarria was not signed and was not certified by the court reporter, as required by Tex.R.Civ.P. 205, 206. These objections were waived by the appellants at trial.

Appellants' points of error 14 and 15 are overruled.

In point of error 16, the appellants contend that the trial court erred in including portions of sec. 700 of the Restatement 2d of Torts in its instructions to the jury on damages, because the common law action for interference with child custody in violation of a court order, set forth in sec. 700, has been superseded by the passage of chapter 36 of the Texas Family Code.

Tex.Fam.Code Ann. sec. 36.03 (Vernon Supp.1986) specifies the elements of damages in an action for interference with child custody. In addition to the statutory elements of damages, the trial court submitted to the jury an element of damage for interruption of the parent-child relationship, based solely on sec. 700 of the Restatement 2d of Torts.

Appellees contend that recovery of damages for causes of action at common law not incorporated into the statutory scheme is permissible due to the provisions of sec. 36.06, Tex.Fam.Code. That provision states:

This chapter does not affect any *other* civil or criminal remedy available to any person, including the child, for interference with child custody, nor does it affect the power of a parent to represent the interest of a child in any suit brought on behalf of the child. (emphasis added).

█ The general rule is that an existing common-law right of action is not taken away by a statute save by direct enactment or necessary implication and that laws depriving a citizen of rights possessed by them should be strictly construed. *Silurian Oil Co. v. White* 252 S.W. 569, 570 (Tex.Civ.App.—Amarillo 1923, no writ). *See also Satterfield v. Satterfield*, 448 S.W.2d 456 (Tex.1969).

█ This rule of construction is not applicable in the present case because chapter 36 of the Texas Family Code was not enacted in derogation of the common law. Rather, the Act generally enacts the common law action for interference with child custody with some changes in recoverable damages and in procedural matters. Chapter 36 of Texas Family Code is not inconsistent with the common law. In effect, it enacted the common law damages remedy for interference with child custody.

Appellants' point of error 16 is overruled.

The appellants contend in point of error 17 that the trial court committed reversible error in denying their special exceptions, motions for new trial, and motion for judgment n.o.v. because none of the appellants ever received notice prior to the appellees filing suit.

Tex.Fam.Code Ann. sec. 36.07(a) provides:

As a prerequisite to the filing of suit under this chapter, a person who has been denied a possessory interest in a child in violation of a court order shall get written notice of the specific violation of the order to the person violating the order.

Subsection (d) of sec. 36.07 states:

Notice need not be given to persons *aiding or assisting* in conduct for which a cause of action is authorized under this section.

In Special Issue No. 4, the jury found that none of the appellants received notice prior to the filing of the present lawsuit. In Special Issue No. 2, the jury found (1) that none of the appellants were guilty of taking the two children; (2) that Charles W. Smith, Sr., Pat Smith, and Kim S. Chavarria did aid or assist another person in taking the two children; (3) that Charles W. Smith, Sr., Pat Smith, and Kim S. Chavarria retained possession of the two children; (4) that Charles W. Smith, Sr., Pat Smith, and Kim S. Chavarria aided or as-

sisted another person in retaining the two children; (5) that Charles W. Smith, Sr., Pat Smith, and Kim S. Chavarria, Esteban Chavarria, and Mark Smith concealed the whereabouts of the two children; and, (6) that Charles W. Smith, Sr., Pat Smith, Kim S. Chavarria, Esteban Chavarria, and Mark Smith aided or assisted another person in concealing the whereabouts of the two children.

Based on the provisions of sec. 36.07(d), appellants' point of error 17 has no merit and is overruled.

In points of error 18 and 19, the appellants contend that the trial court improperly charged the jury that future damages could be awarded under Tex.Fam.Code Ann. sec. 36.03, and also that there was insufficient evidence to support the damages awarded by the jury in Special Issue No. 15.

Tex.Fam.Code Ann. sec. 36.03 (Vernon Supp.1986) states that damages in an action for interference with child custody shall consist of the "actual costs and expenses" of the petitioner for various items and also the "value of mental suffering and anguish incurred by the petitioner." The appellants contend that "actual costs and expenses" include only those amounts incurred at the time of trial and does not include future costs and expenses arising from the interference with child custody.

Regarding compensatory or actual damages, 28 Tex.Jur. 3rd *Damages* sec. 8 (1983), states that "a recovery may be had for apprehended future consequences that are likely or reasonably probable." In *McAllen v. Western Union Telegraph Co.*, 70 Tex. 243, 7 S.W. 715, 717 (1888), the court stated that the general rule is "that a wrongdoer shall be answerable for all the injurious consequences of his tortious acts, which, according to the usual course of events and general experiences, were likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated." Relating to the same issue, the court in *Press v. Davis*, 118 S.W.2d 982 (Tex.Civ. App.—Fort Worth 1938) *judgmt. modified*,

135 Tex. 60, 140 S.W.2d 438 (1940), stated that "the fundamental rule is that the defendant may be held liable for such consequences of his conduct as he could have or ought to have foreseen or anticipated, the basis of responsibility being the same in cases of tort as it is in cases of breach of contract." *Id.* at 993. *See also Galveston, Harrisburg & San Antonio Ry. v. Powers*, 101 Tex. 161, 105 S.W. 491 (1907); *Kingham Messenger & Delivery Service, Inc. v. Daniels*, 435 S.W.2d 270, 273 (Tex.Civ.App. —[14th Dist.] 1968, no writ).

We hold that "actual costs and expenses", as used in sec. 36.03, includes prospective costs and expenses that are supported by the evidence. We hold that there is sufficient evidence to support the jury's finding in issue 15.

Appellants' points of error numbers 18 and 19 are overruled.

In points of error 20 and 21, the appellants contend that the trial court committed reversible error in requiring appellant Charles William "Chick" Smith, Sr. to testify as to whether or not he knew that his wife was in Scotland with Charles William "Chuck" Smith, Jr., and Kim Smith Chavarria. The question was asked outside the hearing of the jury. Appellant Charles William "Chick" Smith, Sr. answered the question. Subsequently, the question was again asked in the presence of the jury and appellant Charles William "Chick" Smith, Sr. declined to answer and invoked his fifth amendment rights.

Tex.R.Evid. 602 provides that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Since the question was asking for testimony relating to the witness' own personal knowledge, the question was not objectionable. However, the witness' attempt to explain how he had acquired the knowledge, concerning the whereabouts of his wife, involved testimony predicated on hearsay statements. Tex.R.Evid. 801. Such hearsay testimony was not admissible because it did not come under any excep-

tion to the hearsay rule. Tex.R.Evid. 802, 803.

Appellants' points of error 20 and 21 are overruled.

The appellants contend in point of error 22 that the trial court committed reversible error in admitting into evidence plaintiff's exhibits numbers 3, 4, 5, 6, and 7 for which the proper predicate had not been established.

The objected to exhibits were passport applications of the two minor children, Charles William "Chuck" Smith, Jr., Charles William "Chick" Smith, Sr., and Pat Smith.

Tex.R.Evid. 901(a), regarding the authentication and identification of documents, states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex.R.Evid. 902, regarding self-authentication, states in material part:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: (1) domestic public documents under seal. A document bearing a seal proporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the trust territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature proporting to be an attestation or execution. (2) Domestic public documents not under seal. A document proporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, *if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.*

The exhibits at issue are official documents which purport to be signed by George P. Schultz in his official capacity as Secretary of State of the United States. The signature is subscribed and sealed by the authorized authentication officer, La-Verne B. Massie.

Each of these exhibits satisfy the self-authentication requirements of Tex.R.Evid. 902(2). Appellants' point of error 22 is overruled.

In points of error 23 and 24, the appellants contend that the trial court committed reversible error in entering sanctions and a modified judgment nunc pro tunc, thereby rendering a default judgment against appellant Charles William "Chick" Smith, Sr. for failure to appear at a deposition in aid of judgment.

On August 22, 1985, judgment was entered. No supersedeas bond was filed by the defendants to stop enforcement of the judgment. On November 4, 1985, pursuant to Tex.R.Civ.P. 621a, the trial court ordered defendant Charles William "Chick" Smith, Sr. to appear for a post-judgment deposition. On November 26, 1985, the plaintiffs' motion for sanctions against Charles William "Chick" Smith, Sr. for failure to appear at the deposition was granted. Those sanctions included entering a modified judgment nunc pro tunc on December 5, 1985, by which the pleadings of Charles William "Chick" Smith, Sr. were stricken and a default judgment against that defendant was entered.

Tex.R.Civ.P. 621a states in material part:

At any time after rendition of judgment, and so long as said judgment has not been suspended by a supersedeas bond or by order of a proper court and has not become dormant ..., the successful party may, for the purpose of obtaining information to aid in the enforcement of such judgment, initiate and maintain in the trial court in the same suit in which said judgment was rendered *any discovery proceeding authorized by these rules for pretrial matters, and the rules governing and relating to such pretrial discovery proceedings shall apply in like manner to discovery proceedings after judgment.... Judicial*

*supervision of such discovery proceedings after judgment shall be the same as that provided by law or these rules for pretrial discovery proceedings insofar as applicable.*

Under rule 621a, a trial court is empowered to impose sanctions included in Tex.R. Civ.P. 215 for post-judgment discovery abuse. Rule 215(2)(b)(5) provides that a trial court, as part of its power to impose sanctions, may enter "an order striking out pleadings or parts thereof."

The appellants contend that the trial court did not have the authority to strike appellant Charles William "Chick" Smith, Sr.'s pleadings and enter a default judgment against that defendant as part of its post-judgment sanctions for discovery abuse.

■■■ As previously stated, the judgment against the appellants was signed on August 22, 1985. On September 20, 1985, the appellants filed a motion for new trial. A written order on that motion was apparently never signed by the trial court. As a result, the appellants' motion for new trial was overruled as a matter of law 75 days after the judgment was signed, or on November 5, 1985. Tex.R.Civ.P. 329b(c).

Tex.R.Civ.P. 329b(e) provides:

If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until 30 days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

The trial court had plenary power to modify the judgment until 30 days after the appellants' motion for new trial was overruled, or until December 5, 1985. The trial court still possessed plenary power over the case on December 5, 1985; therefore, it had the authority to modify the judgment on that date. Tex.R.Civ.P. 329b(d).

In the case of *Arndt v. Farris,* 633 S.W.2d 497 (Tex.1982), the court discussed the authority of a trial court to enter sanctions for post-judgment discovery abuse. In that case, the trial court had imposed monetary sanctions. The appellant in that case contended that the trial court did not have jurisdiction to enter any order relating to post-judgment discovery under rule 621a without the filing of a new petition and service of citation. The appellant based his argument on the fact that the trial court had lost all jurisdiction over the case once the judgment became final for purposes of appeal.

In response to that argument, the court stated that while the trial court's power to vacate, modify, correct, or reform a judgment ceases under rule 329b(d) 30 days after the judgment is signed (Rule 329b(e) is the applicable rule in the event a motion for new trial is filed, as in the present case), the court's power to enforce its judgment is not so limited. The court further stated that the general rule is that every court having jurisdiction to render a judgment has the inherent power to enforce its judgments. *Id.* at 499. That power is part of the court's jurisdiction, and the court may employ suitable methods to enforce its judgments. *Id.* Rule 621a is an aid to the enforcement of the court's judgments, and the trial court has continuing jurisdiction over such matters as set forth in the rule. *Id.*

■■■ In applying Rule 621a and the Texas Supreme Court's holding in *Arndt* to the present case, it is clear that the trial court had continuing authority to impose Rule 215 sanctions against appellant Charles William "Chick" Smith, Sr. for post-judgment discovery abuse. It is apparent that the trial court did possess the authority to strike pleadings as a sanction. However, while the court has continuing authority to impose sanctions, the authority to strike pleadings and modify the judgment as a post-judgment sanction is restricted by the time limitation placed on the court's plenary power. *See* Rule 329b(f). Since the trial court still possessed plenary power on December 5, 1985, the date on which the modified judgment was entered, the trial court did not act without authority.

Appellants' points of error 23 and 24 are overruled.

In point of error 29, the appellants contend that the trial court committed reversible error in permitting the appellees to file plaintiff's third and fourth amended original petitions during trial.

Tex.R.Civ.P. 63 states:

Parties may amend their pleadings ... by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that *any amendment offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such amendment will operate as a surprise to the opposite party.*

The trial in the present case began on July 23, 1985. The plaintiff's third amended original petition was filed on that same date. The appellees' fourth amended original petition was filed on August 6, 1985, the day before final arguments to the jury.

In both instances, leave of the court was obtained prior to filing the amended petitions. The appellants have not claimed, either before the trial court or on appeal, that they were unfairly surprised by the amended petitions.

The decision to allow amendment of pleadings within seven days of trial is within the sound discretion of the trial court, and unless it clearly appears that such discretion has been abused, the order permitting or refusing a trial amendment will not be disturbed. *Hancock Fabrics, Inc. v. Martin,* 596 S.W.2d 186 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Galveston Bay Conservation and Preservation Association v. Texas Air Control Bd.,* 586 S.W.2d 634 (Tex.Civ. App.—Austin 1979, writ ref'd n.r.e.). The trial court *shall* allow the filing of amended petitions unless there is a showing that the amendment would operate as a surprise to the opposing party. *Rocha v. Ahmad,* 676 S.W.2d 149 (Tex.App.—San Antonio

1984, writ dism'd). The amended petitions may be filed up to the time the judgment is signed. *Id.* at 154. Under these facts, we find no abuse of discretion in granting leave to file the amended petitions.

Appellants' point of error 29 is overruled.

Appellants contend in point of error 30 that the trial court committed reversible error in granting judgment for future damages and attorney's fees on appeal when there were no pleadings to support such an award.

In all of their pleadings, the appellees requested damages under Tex.Fam. Code Ann. sec. 36.03, following the specific language of that statute. The issue of future damages and attorney's fees was tried by consent, and thus, pleadings are not necessary to support judgment. Tex.R. Civ.P. 67.

Appellants' point of error 30 is overruled.

Appellants contend in point of error 34 that the cumulative affect of the error in this case amounted to such a denial of the rights of the appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Based on the discussion of each of the prior points of error in this case, this point of error is without merit.

Appellants' point of error 34 is overruled.

The judgment of the trial court is affirmed.